UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DORMAN, *et al.*,

    Plaintiffs,

v.

Case No. 15-cv-12552
Hon. Matthew F. Leitman

CHARTER TOWNSHIP OF CLINTON,

    Defendant.

_____/

**<u>ORDER GRANTING PLAINTIFFS' MOTION TO
DISQUALIFY DEFENDANT'S CO-COUNSEL (ECF #63)</u>**

On September 12, 2018, Plaintiffs Michael Dorman and River of Life Ministries, INT ("RLF") moved to disqualify Defendant Clinton Township's co-counsel Robert C. Davis. (*See* ECF #63.) The Court held a hearing on the motion on October 16, 2018, and the parties thereafter submitted supplemental briefs. (*See* ECF ## 71, 73.) For the reasons that follow, the Court reluctantly **GRANTS** the motion.

**I**

Dorman is the pastor RLF, a church located in Clinton Township. (*See* Am. Compl. at ¶¶ 1-2, ECF #8 at Pg. ID 113.) In this action, Dorman and RLF allege that, among other things, Clinton Township violated the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* when it refused to

1

grant them a special land-use permit and prohibited them from using property located at 22515 Laurel (the "Laurel Property") as a church. (*Id.* at Pg. ID 112-13.) Dorman and RLF served their Complaint on February 11, 2016. (*See* ECF #10.) Shortly thereafter, attorney Peter Peacock filed an appearance on behalf of Clinton Township. (*See* ECF #11.) Two years later, on April 23, 2018, Davis appeared as co-counsel for Clinton Township. (*See* ECF #51.) Since that time, Davis has filed multiple briefs and attended several motion hearings on behalf of Clinton Township.

Dorman and RLF filed their motion to disqualify Davis on September 12, 2018. (*See* ECF #63.) They argue that the Court should disqualify Davis because he "counseled Pastor Dorman in 2014 on the same matter that is the subject of this lawsuit" and then discussed RLF's land-use approval with Clinton Township on Dorman's behalf. (*Id.* at Pg. ID 2327.) They therefore insist that Davis previously provided legal services to Dorman with respect to the same subject matters that are at issue in this action. (*See id.*)

Dorman has submitted two sworn certifications in support of his motion. (*See* ECF ## 63-1, 67-1.) In the certifications, Dorman explains that in 2014, he sought legal counsel "to assist with the land use application process [for the Laurel Property] and with representation before the Clinton Township Board of Trustees." (ECF #63-1 at ¶6, Pg. ID 2342.) He says that he was referred to Davis and that he "called Mr. Davis at his office and discussed the internal discussions and plans of [RLF] and its

2

desire for a Special Use Permit in order to operate a church at the Laurel [Property]."[1] (*Id.* at ¶¶ 7-8, Pg. ID 2342.) Doman maintains that during these discussions, he "shared confidential information [with Davis] about [RLF's] plans for the future." (*Id.* at ¶12, Pg. ID 2343.) Davis then "assured [Dorman] that he would arrange to speak with members of the Clinton Township government about the church project, as well as the need for a Special Use permit." (*Id.* at ¶9, Pg. ID 2342.) One of the people Davis said that he would speak with on Dorman's behalf was Carlo Santia, the head of the Clinton Township Planning department. (*See id.* at ¶10, Pg. ID 2342.) Dorman says that Davis spoke with the Township officials, including Santia, and that Davis then "reported back to [Dorman] that [Clinton] Township was very supportive of the church project and related special use permit application." (*Id.* at ¶11, Pg. ID 2343.)

Despite the initial positive reports from Davis, Dorman and RLF were ultimately not approved for a special use permit and were prohibited from operating the Laurel Property as a church. This lawsuit followed.

---

[1] In Dorman's reply brief, he informed the Court that he had subpoenaed his phone records for 2014 in an effort to provide additional evidence that he had made this phone call to Davis. (*See* Dorman Reply. Br., ECF #67 at Pg. ID 2499.) In a supplemental submission dated November 20, 2018, Clinton Township informed the Court that Dorman's "cell phone provider had no records at all for any calls coming or going from [Dorman's] cell phone in the calendar year of 2014." (Clinton Township Supp. Br., ECF #74 at Pg. ID 2690.)

Dorman and RLF did not retain Davis to represent them in this action. Instead, Davis and RLF initially retained attorney Susan Friedlaender. They are now represented by attorney Daniel Cortez.

Friedlaender and Cortez knew about a connection between Dorman and Davis long before Dorman moved to disqualify Davis in September of this year. Dorman told Friedlaender during her representation of him in 2015-2017 that Davis could be a potential witness in this action, and he told Cortez in July 2017 about his communications with Davis. (*See* ECF ## 67-2, 67-3; *see also* ECF #67-1 at ¶¶ 16-17, Pg. ID 2505-06.) Dorman says that he and Cortez did not move to immediately disqualify Davis when Davis appeared in April 2018 because he (Dorman) did not realize at that time that Davis was the attorney Robert Davis with whom he had communicated earlier. Dorman says he first realized that fact when he began preparing for a settlement conference in September 2018 (*see* ECF #63-1 at ¶¶ 14-16, Pg. ID 2343), and he filed the pending motion to disqualify shortly thereafter.

Davis does not directly dispute Dorman's account of their prior communications. Instead, he says only that he has no specific recollection of communicating with Dorman about RLF and no memory of speaking with anyone at Clinton Township, including Santia, on Dorman's behalf. (*See* Davis Affidavit at ¶¶ 2-5, ECF #65-4 at Pg. ID 2403.) In addition, Davis does not have any records of any communications with Dorman, any records that he opened a file on Dorman's

4

behalf, or any records that he ever billed Dorman or RLF for any legal services. (*See id.* at ¶¶ 6-9, Pg. ID 2403.) Davis has also submitted an affidavit from Santia in which Santia says that he too does "not recall having any conversations with [Davis] in 2014 regarding either [Dorman] or [RLF]." (Santia Aff. at ¶3, ECF #65-5 at Pg. ID 2407.)

## II

### A

"Courts have the inherent authority [and discretion] to prevent individuals from practicing before them." *Atmosphere Hospitality Management Services, LLC v. Royal Realities, LLC*, 28 F.Supp.3d 692, 697 (E.D. Mich. 2014) (citing *D.H. Overmyer Co., Inc. v. Robson*, 750 F.2d 31, 33 (6th Cir. 1984)). When courts are confronted with a motion to disqualify counsel, they should "be sensitive to the competing public policy interests of preserving client confidences and permitting a party to retain counsel of his choice." *Id.* (quoting *Manning v. Waring, Cox, James, Sklar, and Allen*, 849 F.2d 222, 224 (6th Cir. 1988)). In the Sixth Circuit, "disqualification of counsel is appropriate if '(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.'" *Bowers v. Ophthalmology Group*, 733 F.3d 647, 651 (6th Cir.

5

2013) (quoting *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882, 889 (6th Cir. 1990)).[2]

**B**

The Court concludes that disqualification of Davis is warranted here under the governing three-part test. First, there appears to have been an attorney-client relationship between Dorman and Davis. "The rendering of legal advice and legal services by the attorney and the client's reliance on that advice or those services is the benchmark of an attorney-client relationship." *Macomb County Taxpayers Ass'n v. L'Anse Creuse Public Schools*, 564 N.W.2d 457, 462 (Mich. 1997) (concluding that attorney-client relationship existed where "individual plaintiffs asked for, received, and acted upon legal advice and services provided by [] attorneys"). And such a relationship "is not dependent on the payment of a fee, nor is a formal contract necessary to create this relationship. The contract may be implied from conduct of the parties. The employment is sufficiently established when it is shown that the

---

[2] Likewise, Michigan Rule of Professional Conduct 1.9(a) provides that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Mich. R. Prof'l Conduct 1.9(a).

advice and assistance of the attorney are sought and received in matters pertinent to his profession." *Id.* (quoting 7 Am. Jur. 2d, Attorneys at Law, § 118 at 187-88).

Here, even though there was no formal agreement between Dorman and Davis, and even though Dorman did not pay any fees to Davis, Dorman has submitted evidence that he sought and received legal services from Davis. More specifically, Dorman sought services from Davis related to RLF's need for a special use permit, and Davis then spoke to representatives of Clinton Township about that permit and relayed the contents of those conversations to Dorman. (*See* Dorman Decl. at ¶¶ 6-12, ECF #63-1 at Pg. ID 2342-43.) And Davis has not provided any counter-evidence that contradicts Dorman's sworn version of events. In fact, at the hearing on Dorman's motion, Davis candidly conceded that while he does not remember speaking with Dorman about RLF or conducting any legal work on Dorman's behalf, he could not definitively say whether he ever provided legal services to Dorman. Likewise, Santia's affidavit does not exclude the possibility that he spoke with Davis about RLF. Santia says only that does not currently recall speaking with Davis. Under these circumstances, the unrebutted evidence in the record supports the conclusion that an attorney-client relationship existed between Dorman and Davis.[3]

---

[3] As noted in footnote 1, *supra*, Dorman's cell phone provider had "no records at all for any calls coming or going from [Dorman's] cell phone in the calendar year of 2014." (Clinton Township Supp. Br., ECF #74 at Pg. ID 2690.) Clinton Township

7

Second, the subject matter of Davis' representation of Dorman is "substantially related" to subject matter at issue here. Indeed, Dorman says that he spoke with Davis about, and that Davis then spoke with Clinton Township about, the subject matter that is at the heart of this dispute: RLF's use of the Laurel Property as a church and the need to acquire a special use permit for that purpose.

Finally, there is unrefuted evidence in the record that Dorman provided confidential information to Davis. Dorman says in his sworn declaration that he "shared confidential information about [RLF's] plans for the future" with Davis. (ECF #63-1 at ¶12, Pg. ID 2343.) The Court acknowledges that Dorman's declaration is vague and does not precisely identify what confidential information he shared with Davis. But a "client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." *Bowers*, 733 F.3d at 651. Given that Dorman's evidence that he shared confidential information

---

appears to contend that this lack of records undercuts the veracity of Dorman's sworn declarations that he called Davis and spoke to him in 2014 about RLF. The Court does not believe that the lack of records meaningfully undermines Dorman's sworn claims concerning his interactions with Davis. The Court is not particularly surprised that Dorman's cellular service provider does not have detailed records of calls made and received four years ago, and the lack of any records of any calls simply sheds no light on whether Dorman did or did not call Davis. Moreover, the fact that Dorman told both of his attorneys about his communications with Davis long *before* Davis filed an appearance in this action is evidence that Dorman did not fabricate his version of events to secure Davis' disqualification.

8

with Davis is unrebutted, the Court concludes that the confidential-information requirement is satisfied.

Accordingly, because there was an attorney-client relationship between Dorman and Davis, the subject matter of that relationship is substantially similar to the subject matter at issue in this action, and Dorman shared confidential information during the course of that relationship with Davis, the Court concludes that disqualification is warranted here.[4]

### III

At the hearing on Dorman's motion, and in a post-hearing brief, Clinton Township argued that Dorman's request to disqualify Davis is barred by the doctrine of laches. (*See* Clinton Township Supp. Br., ECF #71 at Pg. ID 2558-60.) "Laches is an equitable doctrine…invoked in equity to defeat a tardy litigant on account of whose inexcusable delay, after possession of knowledge of the facts" caused prejudice to the opposing party. *Atmosphere Hospitality*, 28 F.Supp.3d at 700. Clinton Township asserts that even though Dorman should have known "from the moment Attorney Davis filed his appearance" in April that this conflict existed, Dorman waited until September, nearly five months later, to file the disqualification

---

[4] The Court recognizes that disqualification is an "extreme sanction," *MJK Family LLC v. Corporate Eagle Management Services, Inc.*, 676 F.Supp.2d 584, 592 (E.D. Mich. 2009), but given that the Sixth Circuit's three-part test is satisfied here, the Court concludes that this is an appropriate case for disqualification.

9

motion. (Clinton Township Supp. Br., ECF #71 at Pg. ID 2559.) Clinton Township further insists that it would suffer prejudice from Davis' disqualification because it has "invested substantial resources in Attorney Davis[] and his representation." (*Id.* at 2660.) The Court concludes that laches does not preclude the disqualification of Davis under the facts that exist here.

First, the Court does not believe that Dorman intentionally and inexcusably waited to file the disqualification motion. While Dorman and/or his counsel likely should have recognized earlier that a conflict existed, "[t]he delay in this case, although troublesome, is not disqualifying." *Atmosphere Hospitality*, 28 F.Supp.3d at 700. Indeed, none of the cases on which Dorman relies upon found an inexcusable delay where, as here, the delay was only five months in duration. *See In Re Internet Navigator Inc.*, 293 B.R. 198, 207-08 (N.D. Iowa 2003) (denying motion to disqualify counsel after case was settled and noting that "[w]hen a party delays for several years before motioning for disqualification, courts are less likely to grant the motion"); *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1116 (D.N.J. 1993) ("Plaintiffs inexplicably waited until *three years* after filing of this lawsuit and four months prior to trial before seeking to disqualify Dewey Ballantine" (emphasis in original)); *Continental Holdings, Inc. v. U.S. Can Co.*, 1996 WL 385346, at *1 (N.D. Ill. July 3, 1996) ("The evidence shows that USC knew, or had reason to know, of any conflict at least 25 months before filing its motion to

10

disqualify"). The Court is not persuaded that Dorman acted in bad faith or that he waited too long to file his motion to disqualify.

Second, the Court does not believe that disqualifying Davis will unduly prejudice Clinton Township. While Davis has done a fine job representing Clinton Township since he appeared in April, he is not Clinton Township's only attorney in this matter. Peter Peacock has appeared in this case on Clinton Township's behalf since the action's inception. He is familiar with all of the legal issues in this case and is more than capable of representing Clinton Township during the remainder of this action. Moreover, there are not any other pending motions or a quickly-approaching trial date that would cause Clinton Township undue prejudice if Davis were not allowed to continue as counsel.

For all of these reasons, laches does not bar Dorman from seeking disqualification of Davis in this action.

## IV

While the Court ultimately concludes that disqualification of Davis as counsel for Clinton Township is warranted, it reaches that conclusion reluctantly. Davis has shown great candor since he appeared in this action, and it has been a privilege to have him in front of the Court. He has faithfully and ably represented Clinton Township's interests, and his arguments have provided substantial assistance to the Court as it has wrestled with the complicated legal questions at issue in this matter.

11

However, given the unrefuted evidence that Dorman has provided the Court, out an abundance of caution, the Court concludes that disqualification is appropriate.

Accordingly, for all of the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiffs' motion to disqualify counsel (ECF #63) is **GRANTED** and attorney Robert C. Davis' appearance on behalf of Clinton Township is **TERMINATED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: November 20, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 20, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764